Peter R. Afrasiabi (Bar No. 193336)
Christopher W. Arledge (Bar No. 200767)
TURNER GREEN AFRASIABI & ARLEDGE LLP
535 Anton Boulevard, Suite 850
Costa Mesa, California 92626
Telephone:   (714) 434-8750
Facsimile:    (714) 434-8756

Attorneys for Plaintiff and counter-defendant
Network Signatures, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| NETWORK SIGNATURES, INC., | Case No. SACV 08-718 DOC (RNBx) |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S FOURTH, FIFTH AND SIXTH COUNTERCLAIMS AND MOTION TO STRIKE ELEVENTH THROUGH THIRTEENTH AFFIRMATIVE DEFENSES** |
| v. | |
| CITIBANK, N.A., | |
| Defendant. | **[Declaration of Peter Afrasiabi, [Proposed] Order filed concurrently herewith]** |
| | Hearing Date: November 17, 2008 |
| | Time:            8:30 |
| | Courtroom:    9-D |
| AND RELATED ACTION | |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that, on November 17, 2008 at 8:30 a.m., or as soon thereafter as the matter may be heard before Judge Carter of this Court, Plaintiff will move, and does hereby move to dismiss defendant and counterclaimant Citibank N.A.'s

13820.1

10377

0

("Citibank") fourth through sixth counterclaims and strike the eleventh through thirteenth affirmative defenses on the following grounds:

    (1)  Counterclaimant lacks standing to assert the counterclaims and, additionally, there is no private right of action to pursue the counterclaims.

    (2)  The same holds true for the affirmative defenses, which should be stricken for the same reasons.

This motion is based on the attached memorandum of points and authorities, the Declaration of Peter Afrasiabi, the Request for Judicial Notice, the arguments of counsel, and all other materials in this Court's file.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by telephone on October 20, 2008.

Dated:  October 15, 2008 **TURNER GREEN LLP**

By: _____
    Peter R. Afrasiabi
    Attorneys for Plaintiff and counter-defendant,
    Network Signatures, Inc.

13820.1

10377

1

**MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.   Introduction   …………………..……………………………2

II.  Factual and Procedural Background   ………..……………………………..2

III. Rule 12 Standards   …………………...…………………………4

IV.  Legal Argument   …………………...…………………………4

    A.   The Counterclaims Should Be Dismissed Because the Bayh-Dole Act Does Not Confer a Private Right of Action…………………………..5

    B.   The Counterclaims Should be Dismissed Because Citibank Lacks Standing to Challenge the Government's Decision to Grant the Exclusive License, Amend the Exclusive License, and Maintain the Exclusive License in Force…………………………….………………..7

        1.   Standing: Constitutional and Prudential Considerations………8

        2.   The Prudential Standing Focus on the "Zone of Interests" Requires Consideration of the Bayh-Dole Act……………..…..9

        3.   Case Law Confirms that Citibank Lacks Standing to Press its Third, Fourth and Fifth Counterclaims ………………10

    C.   Citibank Failed to Exhaust an Available Administrative Remedy.....14

    D.   The Eleventh and Twelfth Affirmative Defenses Should Be Stricken..……………………………………………………16

    E.   The Thirteenth Affirmative Defense Should Be Stricken………….16

V.   Conclusion   …………………………………………………16

13059.1

1

2

3

## <u>TABLE OF AUTHORITIES</u>

4 *Cases*

5 *Allen v. Wright,* 468 U.S. 737, 751 (1984)…………………………….……..…8

6 *Bennett v. Spear*, 520 U.S. 154, 162 (1996)…………………………………….8

7 *Cahill V. Liberty Mutual Ins. Co.,* 80 F. 3d 336, 337-38 (9th Cir. 1996)…………..4

8 *Cannon v. University of Chicago,* 441 U.S. 677, 690-91 (1979)………..……......6

9 *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)……………………………….....4

10 *Cort v. Ash,* 422 U.S. 66, 78 (1975)…………………………………………..5

11 *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1352 (Fed. Cir.

12 2000)……………………………………………………………...……10

13 *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045,

14 1057 (5th Cir. 1982)…………………………………………………………..4

15 *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)……………......…...8

16 *Opera Plaza v. Hoang*, 376 F.3d 831, 836-37 (9th Cir. 2004)…………………..6

17 *Platzer v. Memorial Sloan Kettering Institute for Cancer Research*,

18 787 F. Supp. 360, 364-65 (S.D.N.Y. 1992)…..……………………......…5,6,7

19 *Rapid Transit Advocates v. Southern California Rapid Transit Dist.,* 752 F.2d

20 373, 377 (9th Cir. 1985)……………………………………………….……7

21 *Service Engineering Corp. v. USDA*, 1999 U.S. Dist. LEXIS 21952, *11 (D. Md.

22 March 30, 1999) ……………………………………………...…….…10,11, 12, 13

23 *Southern Research Institute v. Griffin*, 938 F.2d 1249 (11th Cir. 1991)………..…13

24 *Suter v. Artist M.*, 503 U.S. 347, 363 (1992)…………………………………5, 7, 9

25 *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979)…………………..5,6,7

26 *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15 (1979)……….5,6

27 *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 772 (1981)………………....6

28 *Warth v. Seldin,* 422 U.S. 490, 498 (1975)…………………………………...8

13059.1

1

***Statutes/Regulations***

2

3   35 U.S.C. § 200-212…………………………………………………..5, passim

4   37 C.F.R. § 404.2……………………………………………………6, passim

5   H.R.Rep. No. 96-1307, pt. 1, at 3 (1980)…………………………………………9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13059.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case involves a United States Navy patent, which inventions inherent in the patent were funded by citizens of the United States.  That patent is the 5,511,122 patent, and before the Navy licensed the '122 patent to Plaintiff, the Navy followed the standard notice and publication procedures designed to give any entity that opposes such a license an opportunity to be heard.  The proposed license was published in the Federal Register for all the world to comment on and oppose if desired.  Citibank said nothing.  Yet now, apparently outraged by our Government's licensing decision, Citibank seeks to have its own policy determinations about the wisdom and propriety of the license (conveniently, that the Navy should not have licensed Plaintiff) forced on the Government and Plaintiff by way of asking this Court to issue a veto decision on the Executive branch.  However, Citibank is barred as a matter of law from seeking such a judicial veto because there is no private right of action for its counterclaims, it lacks standing, and it failed to exhaust administrative remedies.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's predecessor in interest to the patent at issue, U.S. Patent No. 5,511,122 (the "'122 Patent"), first entered into an exclusive license ("Exclusive License") to the '122 Patent with the United States of America, as represented by the Secretary of the Navy ("Navy") on September 28, 2004.[1]  The Exclusive License was granted only after Plaintiff's predecessor in interest, Metrix Services, Inc., submitted a proposed plan for developing and marketing products based on the inventions claimed in the '122 Patent and

---

[1] *See* Declaration of Peter Afrasiabi ("Afrasiabi Decl."), Exhibit A.

13820.1

10377

2

**MOTION TO DISMISS**

after the Navy published a notice of an intention to grant an exclusive license to Metrix Services on September 9, 2004.[2]  The notice expressly informed the public that:

> The Department of the Navy hereby gives notice of its intent to grant to Metrix Services, Inc., a revocable, nonassignable, exclusive license to practice in the United States and certain foreign countries, the Government-owned invention described in U.S. Patent No. 5,511,122 entitled "Intermediate Network Authentication.[3]

The notice further informed the public of the administrative process for challenging or objecting to the granting of the proposed license:

> Anyone wishing to object to the grant of this license must file written objections along with supporting evidence, if any, not later than September 24, 2004.[4]

Citibank did not submit any objections or challenges within the designated period.

Metrix Services assigned its entire right and interest in the Exclusive License to Network Signatures on February 14, 2006.[5]  Concurrently, an amendment to the Exclusive License, approving that assignment, was executed by Metrix Services, Network Signatures, and the United States of America, as represented by the Secretary of the Navy.[6]

On October 6, 2006, Network Signatures demonstrated its product, EasyConnect™, to personnel at the Naval Research Laboratories.  In response, Ms. Zammitt of The Naval Research Laboratory (NRL) Technology Transfer Office stated:

> NRL's technical and legal personnel who attended the demonstration have considered Network Signatures' presentation and have determined that EasyConnect™ relates to an embodiment of the invention claimed in United States Patent No.

---

[2] *See id.* at page 4.
[3] *See* Afrasiabi Decl., Exhibit B, Intent to Grant; Request for Judicial Notice.
[4] *Id.*
[5] *See* Afrasiabi Decl., Exhibit C, Assignment.
[6] *See* Afrasiabi Decl., Exhibit D, Amendment, at ¶ 5.

13820.1

10377

3

**MOTION TO DISMISS**

5,511,122 (the '122 patent) entitled "Intermediate Network Authentication.

Based on Network Signatures' demonstration, and absent any evidence to the contrary, ***NRL takes the position that Network Signatures has successfully carried out a plan for development of the licensed invention claimed in the '122 patent and has brought an invention as claimed in the '122 patent to practical application.[7]***

Citibank has filed counterclaims alleging that the "License is Void as Improperly Issued" (Fourth Counterclaim) and "Void as Improperly Amended in Violation of Applicable Statutes and Regulations" (Fifth Counterclaim) and further request "Terminating the License" (Sixth Counterclaim).  Citibank has also filed affirmative defenses making the same arguments (Eleventh through Thirteenth).  This motion now follows.

## III.    RULE 12 STANDARDS

In deciding a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff (here, counter-claimant) and must accept as true all well-pleaded factual allegations.  *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d  336, 337-38 (9th Cir. 1996).  As such, the motion will be granted if the plaintiff can prove no set of facts in support of its claim that would entitle it to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Similar to a motion to dismiss, a motion to strike under Rule 12(f) is appropriate when a defense is insufficient as a matter of law.  *See Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

## IV.    LEGAL ARGUMENT

Citibank wishes to get another bite at the apple.  First, having failed to respond to a public notice requesting objections and commentary on the proprietary of the Exclusive License, Citibank now wishes to have a federal court intervene on its behalf, adopt its

---

[7] *See* Afrasiabi Decl., Exhibit F, October 2006 Letter (emphasis added).

13820.1

10377

4

**MOTION TO DISMISS**

public policy position (in place of the United States Government's), and terminate the Exclusive License under the Bayh-Dole Act, 35 U.S.C. § 200 *et seq*.  But there is no private right of action under the Bayh-Dole Act and even if there was one, Citibank lacks standing to assert its claims.  Finally, even if there were a private right of action and Citibank had standing, its claims are precluded due to the failure to exhaust administrative remedies.  Thus, the Court should dismiss the Fourth, Fifth and Sixth Counterclaims as detailed in Sections A-C and strike the Eleventh through Thirteenth Affirmative Defenses as detailed in section D-E *infra*.

**A.      The Counterclaims Should Be Dismissed Because the Bayh-Dole Act Does Not Confer a Private Right of Action.**

The fourth, fifth, and sixth counterclaims are all predicated upon the Bayh-Dole Act, 35 U.S.C. §§ 200-212.  *See* Counterclaim ¶¶ 58-102 (arguing why under the Bayh-Dole Act the Navy's License here is bad policy).  However, there is no private right of action under the Bayh-Dole Act that gives rise to the claims.  *See Platzer v. Memorial Sloan Kettering Institute for Cancer Research*, 787 F. Supp. 360, 364-65 (S.D.N.Y. 1992) (finding no private right of action under Bayh-Dole Act).

The Supreme Court has established a methodology to ascertain whether a statute gives rise to a private right of action.  "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15 (1979).  The burden is on the plaintiff (here, counterclaimant) to establish that a private right of action exists.  *See Suter v. Artist M.*, 503 U.S. 347, 363 (1992).  However, "the fact that a federal statute has been violated and some person has been harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979).  Rather, courts apply the four factor test from *Cort v. Ash,* 422 U.S. 66, 78 (1975): "First, is the plaintiff one of a class for whose especial benefit the statute was

13820.1
 10377

5

**MOTION TO DISMISS**

enacted – that is, does the statute create a federal right in favor of the plaintiff?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  Third, is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff?  And finally, is the cause of action one traditionally delegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?"  *Id.* at 78.  Here, consideration of those four factors yields the conclusion that there is no private right of action under the Bayh-Dole Act.

First, as discussed above, the Act was never codified to protect competitors of licensees, and so Citibank is not an entity the Act was passed to protect.  *See id.* § 200 (discussing policy of Act).  Indeed, if the statute specifically indicated that entities such as those aggrieved by a licensing decision were intended beneficiaries, then that would cut in favor of finding a private right of action.  *See Cannon v. University of Chicago,* 441 U.S. 677, 690-91 (1979).  Here, the Act lists many purposes, but none of them include protecting those who do not participate in the notice and comment procedures that precede licensing and then subsequently regret their failure to so participate.  In fact, the very policy of the Act is to promote the utilization of government inventions.  *See* 35 U.S.C. § 200; 37 C.F.R. § 404.2.  Nor does the Act purport to protect those who infringe government inventions.  And as held by the Southern District of New York, "the intended beneficiaries of the Bayh-Dole Act are the institutions themselves and the government."  *Platzer*, 787 F. Supp. at 364-65.

Second, there is nothing in the Act that indicates an intent to create a private right of action in those who believe the policy choices made by the agency were bad policy choices; that is, there is no indication that Congress decided that in allowing the government to license inventions it would also allow civil litigation between private parties over the Government's wisdom in licensing the invention.  This second factor is perhaps the most important *Cort* factor.  *See Transamerica Mortgage*, 444 U.S. at 15-16.  And

13820.1
10377

6

**MOTION TO DISMISS**

1   "implying a private right of action on the basis of congressional silence is a hazardous

2   enterprise, at best." *Touche Ross*, 442 U.S. at 571.

3          Under this second factor, it is clear that the Bayh-Dole Act simply empowers a

4   federal agency – the Secretary of Commerce – to promulgate regulations under the Act.

5   *See* 35 U.S.C. §§ 208, 209.  There is nothing in the Act that contemplates that private

6   parties may file private actions under the statute.  Likewise, there is nothing in the

7   implementing regulations either.  *See* 37 C.F.R. §§ 404.1-404.14.  This precludes a private

8   right of action under Supreme Court and this Circuit's precedent.  *See Universities*

9   *Research Ass'n v. Coutu,* 450 U.S. 754, 772 (1981) (declining to find private right of action

10  under federal statute that serves as a directive for policy implementations); *Opera Plaza v.*

11  *Hoang*, 376 F.3d 831, 836-37 (9th Cir. 2004) (regarding second *Cort* factor, finding no

12  private right of action where statute merely gave agency ability to promulgate regulations

13  even though one regulation did specifically provide for certain lawsuits); *Rapid Transit*

14  *Advocates v. Southern California Rapid Transit Dist.,* 752 F.2d 373, 377 (9th Cir. 1985)

15  (no private right of action under a statute which focused on spending directives and

16  conditions for government grants).

17         Third, as discussed above and below in section B, *infra*, it is inconsistent with the

18  scheme of the Act to allow this second-guessing of government decisions in civil litigation

19  between the licensee of the government and an entity who believes the license should not

20  have been granted.  The statutory scheme nowhere envisions such a remedy for an entity

21  such as Citibank as discussed above, and the legislative history equals that.  *See Platzer*,

22  787 F. Supp. at 365.  Where legislative history is silent, "[t]he question whether Congress

23  ... intended to create a private right of action, has been definitely answered in the negative."

24  *Touche Ross*, 442 U.S. at 576.

25

26

27

28   13820.1
      10377

7

**MOTION TO DISMISS**

Finally, the fourth factor is inapplicable because the question of federal licensing of patent inventions is never a question that belongs to the states because federal law exclusively governs patents.

In short, the claims are defective because no private right of action exists for the claims advanced by Citibank.  Accordingly, there is no independent cause of action under the Bayh-Dole Act for Citibank to litigate its displeasure with the policy choice of the government in entering an agreement with Plaintiff, and so the claims should be dismissed under Rule 12(b)(6).

**B.    The Counterclaims Should be Dismissed Because Citibank Lacks Standing to Challenge the Government's Decision to Grant the Exclusive License, Amend the Exclusive License, and Maintain the Exclusive License in Force.**

Citibank is requesting, pursuant to the provisions of the Bayh-Dole Act, 35 U.S.C. §§ 200-212, that this Court exercise jurisdiction over claims that challenge the Government's decisions to grant the Exclusive License, amend the Exclusive License, and maintain the Exclusive License in force.  However, here Citibank has suffered no actual injury resulting from the Navy's actions and any of Citibank's interests do not fall within the zone of interests protected by the Bayh-Dole Act.  As such, Citibank lacks standing and its claims should be dismissed (even if a private right of action did somehow exist).

### 1.    Standing: Constitutional and Prudential Considerations.

Article III of the Constitution requires a case or controversy.  One of the case or controversy requirements is that the moving party has standing.  The constitutional minimum of standing requires: (1) that the plaintiff personally has suffered actual or threatened injury that is concrete and particularized, not conjectural or hypothetical; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision from the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

13820.1

10377

**MOTION TO DISMISS**

Standing also contains prudential limits and considerations, which here are critical. The Supreme Court recognizes that suits against the Government necessitate "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen v. Wright,* 468 U.S. 737, 751 (1984), which are "founded in concern about the proper – and properly limited – role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). "Numbered among these prudential requirements is the doctrine of particular concern in this case: ***that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit***." *Bennett v. Spear*, 520 U.S. 154, 162 (1996) (emphasis added). Importantly, "[a]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen,* 468 U.S. at 754.

## 2. The Prudential Standing Focus on the "Zone of Interests" Requires Consideration of the Bayh-Dole Act.

The Bayh-Dole Act authorizes agencies of the federal government to "grant nonexclusive, exclusive, or partially exclusive licenses under federally owned patent applications, patents, or other forms of protection . . . as determined appropriate in the public interest." 35 U.S.C. § 207(a)(2). Congress's primary "policy and objective" in adopting the Act was "to promote the utilization of inventions arising from federally supported research and development." *Id.* § 200. Congress also was concerned that the federal government "obtain[] sufficient rights in federally supported inventions to meet the needs of the Government and protect the public against nonuse or unreasonable use of inventions." *Id.* In keeping with these purposes, before a federal agency may grant an exclusive or partially exclusive license in a federally-owned patent, the agency must determine that granting such a license is reasonably necessary "to bring the invention to practical application or otherwise promote the invention's utilization by the public." *Id.* § 209(c)(1)(A)-(D). Furthermore, the terms of any licensing agreement must provide for "the

protection of the interests of the Federal Government and the public." *Id.* § 209(f).  As the Act's legislative history indicates, the Act was designed to encourage "private industry to utilize government funded inventions through the commitment of the risk capital necessary to develop such inventions to the point of commercial application."  H.R.Rep. No. 96-1307, pt. 1, at 3 (1980).

As a result, the goal of the Bayh-Dole Act is to secure for the public good the benefits of commercialization and commercial exploitation of patents and inventions that result from Government research and work.  Critically, it is not a goal of the Act to protect corporations like Citibank from the potential effects of the grant of the patent monopoly to Network Signatures.  Consequently, this statutory scheme precludes Citibank from possessing the requisite standing because its interests do not fall within the zone of interests that the Bayh-Doyl Act sought to protect.  Indeed, parties like Citibank who did not participate, object or bid in the government publicized licensing scheme and who do not like the outcome of a government license as a matter of law cannot contest the validity of the license because they lack standing.  Case law supports this conclusion, to which we now move.

### 3.   Case Law Confirms that Citibank Lacks Standing.

A Maryland district court case, whose unpublished decision was affirmed and deemed "well-reasoned" by the Federal Circuit in a published opinion, is instructive.  In *Service Engineering Corp. v. USDA*, 1999 U.S. Dist. LEXIS 21952, *11 (D. Md. March 30, 1999), the Court held that "in order to have standing to pursue their claims in this case, Plaintiffs must demonstrate that they have suffered an actual injury arguably within the zone of interests protected by the Bayh-Dole Act that is fairly traceable to the challenged agency actions and that is redressable by a favorable decision of this court." *Id.*  There, as is necessary here, the court analyzed whether the plaintiffs had standing to challenge a

13820.1
10377

10

**MOTION TO DISMISS**

federal agency's decision to grant an exclusive license, and modify the terms of that exclusive license, under the Bayh-Dole Act.  The court ruled that:

> Without some clearer indication in the statute, therefore, ***this court simply cannot find that the Bayh-Dole Act was intended by Congress to protect the interests of parties who voluntarily fail to participate in an agency's patent licensing process…so as to confer standing on such parties to challenge an agency's licensing decision***."

*Id.* at *19-20 (emphasis added).  Therefore, the plaintiffs simply did not have standing to bring the suit.

And this specific March 30, 1999, standing decision of the Maryland District Court was approved and affirmed by the Federal Circuit.  *See Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1352 (Fed. Cir. 2000) ("In a well reasoned thirty-page opinion, the Maryland district court addressed and disposed of each of SEC's assertions, ruling against SEC on every issue.  Because SEC has had a full and fair opportunity to litigate the standing issue at least once, this court will not disturb the judgment of the North Carolina district court dismissing the standing defense.").

That approved and "well-reasoned" opinion, illuminates why here too the challenges should be dismissed as a matter of law.  In *Service Engineering*, the plaintiffs sued the US Department of Agriculture ("Government") for granting an exclusive license in U.S. patent No. 4,458,630 (the "'630 Patent") to Embrex, Inc. and for extending the term of the license in April 1994.  *Id.*  As Citibank asserts in this case, the plaintiffs in *Service Engineering* contended that, in taking these actions, the Government violated the procedural and substantive provisions of the Bayh-Dole Act.  *Id.*

The Government granted the exclusive license at issue to Embrex after a competitive license application process.  *Id .*at *4.  The license was exclusive to Embrex for 10.5 years,

13820.1
 10377

11

**MOTION TO DISMISS**

followed by a period of non-exclusivity for the remainder of the patent term. *Id.* Unlike the situation here, no notice of an intent to grant the license was ever published in the Federal Register, in apparent violation of the statutory and regulatory requirements. *Id.* The plaintiffs asserted that this violation was one basis for declaring the Embrex license null and void. *Id.* at *5. Several years later, the license agreement was revised by eliminating the non-exclusivity period and making the license exclusive for the entire patent term. *Id.* Again, unlike the situation here, no notice of this grant of an additional exclusivity period was ever published. The plaintiffs also asserted that this modification without notice rendered the revised license null and void. *Id.* at *6.

Embrex sued the plaintiffs twice for infringing the '630 Patent; the first time resulted in a settlement agreement and the second time, based upon a breach of the settlement agreement, resulted in a jury verdict in Embrex's favor. The plaintiffs then applied for a non-exclusive license to the '630 Patent one day before the original 10.5 year exclusivity term would have expired. The Government denied the request because the '630 Patent was exclusively licensed to Embrex, now for the entire patent term. The plaintiffs appealed the negative decision to the Secretary of Agriculture in accordance with agency procedures. *Id.* at *7. Having lost that appeal, the plaintiffs then sued the Government seeking a ruling declaring Embrex's original exclusive license as well as the extension of the exclusivity period illegal and invalid.

To pursue their claims, plaintiffs argued that their interests fell within the zone of interests protected by the Bayh-Dole Act.[8] *Id.* at *9. The court disagreed. "To meet the requirements of the prudential standing doctrine, Plaintiffs must show that their interests

---

[8] The Plaintiffs also claimed that they suffered three distinct injuries directly caused by the challenged agency actions: 1) a "competitive" injury due to their inability to compete effectively with Embrex, 2) being sued by Embrex for patent infringement, and 3) injuries arising from a rejection of their application for a non-exclusive license in the patent. Service Engineering, 1999 U.S. Dist. LEXIS 21952 at *9. This was not deemed sufficient, however, to overcome the prudential standing limitations. The same is true here to the extent Citibank's arguments really sound in a "competitive unfairness" type argument.

13820.1

10377

**MOTION TO DISMISS**

affected by the agency action are among those that Congress arguably sought to protect." *Id.* at *13.  The court properly reasoned that the Bayh-Dole Act authorizes agencies of the federal government to grant licenses under federally owned patents as determined appropriate in the public interest and that Congress's primary policy and objective in adopting the Act was to promote the utilization of inventions arising from federally supported research and development. *Id.* at *13-14.  Therefore, the goal of the Bayh-Dole Act is to "secure the public good of commercial exploitation of patents on inventions which result from government-funded research."  *Id.* at *14.  The Bayh-Dole act was not "intended to protect individuals, including corporations, from the anticompetitive effects of government licensing policies."  *Id.*  According to the court, "the Act clearly anticipates, even encourages, such 'anticompetitive effects' since it permits the exclusive licensing of patented government inventions…***nothing in the Act indicates that Congress intended to protect the specific economic interests of parties in competition with government licensees***."  *Id.* (emphasis added).  As a result, parties who voluntarily fail to participate in an agency's patent licensing process lack standing to challenge an agency's licensing decision because they have not suffered a legally cognizable injury stemming from the agency's licensing decision.  *See id.* *19-20.

Service Engineering was correct and the district court's "well-reasoned" analysis forecloses Citibank's challenges here.  In short, Citibank possesses no right under the Bayh-Dole Act that has been violated or infringed – an injury – and so it fundamentally lacks standing: "***this court simply cannot find that the Bayh-Dole Act was intended by Congress to protect the interests of parties who voluntarily fail to participate in an agency's patent licensing process…so as to confer standing on such parties to challenge an agency's licensing decision…***"  *Id.* at *19-20 (emphasis added).  In fact, a contrary decision would open every federal agency licensing decision to challenge from any party who believes that the Government's policy choice was a bad one despite a licensing

13820.1
10377

13

**MOTION TO DISMISS**

1   process specifically designed for the voicing of such concerns.  Fundamentally, those

2   government policy choices are not subject to judicial review by Citibank.

3   **C.       Citibank Failed to Exhaust an Available Administrative Remedy.**

4          Citibank has had multiple opportunities to challenge the Exclusive License.  First, it

5   could have participated in the licensing process for the '122 Patent.  It did not.  Second, it

6   could have submitted objections to the prospective grant of the Exclusive License during

7   the designated notice period.  It did not.  Third, it could have communicated its concerns

8   directly to the Navy, which possesses the contractual right to terminate the Exclusive

9   License.  It has not.[9]

10          Having not pursued any available administrative remedy, Citibank is now foreclosed

11   from seeking judicial review of the Government's decision to grant, amend, and maintain

12   in-force the Exclusive License.  The Eleventh Circuit Court of Appeals made this point

13   clear in a case strikingly on point.

14          In *Southern Research Institute v. Griffin*, 938 F.2d 1249 (11th Cir. 1991), the

15   Eleventh Circuit addressed whether the plaintiff Southern Research Institute (SRI) could

16   obtain judicial review of the Government's decision to exclusively license a patent to the

17   defendant, Griffin.  The Court noted that the Government's power to grant Griffin an

18   exclusive license arose under 35 U.S.C. Sections 207 and 209, precisely the same statutory

19   authority under which the Government granted the Exclusive License in this case.  *Id*. at

20   1252.  The Court also recognized that the substantive regulations embodied in 37 C.F.R. §§

21   404.1-.14 controlled the administrative remedies available to a party challenging a license

22   granted pursuant to 35 U.S.C. §§ 207 and 209.  *Id.*

23          The Eleventh Circuit concluded that the "licensing scheme under 35 U.S.C. §§ 207

24   and 209 and the applicable regulations provided an avenue of administrative appeal" and

25   _____

26   [9]   This is our current understanding without the benefit of discovery.  Neither Citibank nor
27   the Government has informed us of any attempt by Citibank to interfere with Network
     Signatures' contractual rights.

28   13820.1

     10377

                                                    14

                                     **MOTION TO DISMISS**

that where a party does not avail itself of those avenues, it fails "to exhaust a non-futile administrative remedy and thus may not obtain judicial review of the" Exclusive License or Government's decision to grant the Exclusive License. *Id.* at 1253.

More specifically, the applicable regulations envision a public review and objection period for every exclusive license granted by the Government. It is undisputed – and a judicially noticeable fact – that, prior to granting the Exclusive License, the Government published a notice of an intention to grant the Exclusive License and made available to the public an administrative process for challenging or objecting to the grant of the proposed license. *See* Afrasiabi Decl., Exh. B; Request for Judicial Notice. Citibank, who had constructive notice of this administrative process, did not submit its own license application, did not submit any objections to the proposed license grant, and did not file any challenges to the proposed license grant. As noted by *Southern Research*, the challenging party "is charged with the knowledge of the regulations covering objections to proposed licenses that appeared in the Code of Federal Regulations both under Title 41 and under Title 37" and is charged with the responsibility to object pursuant to the regulations. *Id.* Failing to do so, Citibank cannot now seek judicial review of the Government's decision to grant, and maintain in-force, the Exclusive License.

Having foregone all of those opportunities, Citibank now wishes to have this Court make up for Citibank's mistakes and engage in precisely the kind of public policy analysis for which the Government and, in particular, the Navy, is best suited. This Court should decline to do so and, as in *Southern Research*, dismiss the Fourth through Sixth Counterclaims.

Not coincidentally, Citibank believes the Navy's decision to license – for the benefit of the taxpayers to return money to the United States government – was a bad policy decision since that policy decision will require Citibank to pay that money to the taxpayers in the form of damages here. Ironically, however, Citibank is currently receiving countless

13820.1
 10377

15

billions of dollars in federal aid from the taxpayers, apparently not so chagrined about the wealth transfer occurring in *that* direction.

Finally, and in all events, *Southern Research's* holding is another way to skin the standing/private right of action argument detailed above. That is, given the policy directive of the agency to handle these questions and the predicates of the Bayh-Dole Act, these Executive discretionary determinations are not subject to judicial review: "***Congress has committed the refusal to assign or transfer patent rights to the discretion of the various federal agencies that acquire those rights in a manner putting such discretionary refusal beyond judicial review***." *Id.* at 1254-55 (emphasis added).

**D.   The Eleventh and Twelfth Affirmative Defenses Should Be Stricken.**

Citibank's Eleventh Affirmative Defense posits a challenge to the Navy's "practical application" conclusion. The Twelfth Affirmative Defense also boldly claims the Navy made a bad public policy decision in improperly granting the license. For the same reasons above, the Government's subsequent decision that Network Signatures has achieved the practical application required by the statute or that a license is a good decision are decisions that Citibank both lacks standing to challenge and lacks a private right of action to tee up a challenge. *See supra* § A and B. Moreover, Citibank further cannot pursue the claims because is has failed to exhaust the limited and only remedies available thereby precluding judicial review. *See supra* § C. Accordingly, Citibank's Eleventh and Twelfth Affirmative Defenses should be stricken for these same reasons.

**E.   The Thirteenth Affirmative Defense Should Be Stricken.**

Citibank's Thirteenth Affirmative Defense posits a total bar to recovery on the basis that any infringement was being done before the Navy's License and the alleged infringing technology was "in widespread commercial use" before the License. *See* Thirteenth Affirmative Defense. This affirmative defense fails for several reasons.

13820.1
10377

16

**MOTION TO DISMISS**

First, for all reasons addressed above, the Navy's decision to license is not subject to Citibank's challenge here.

Second, and related, the legal touchstone for this commercial use defense is unclear as articulated by Citibank. That Citibank may have been infringing the patent before the License is irrelevant. Citibank was still infringing. There is no affirmative defense as framed by the Thirteenth Affirmative Defense that provides the vehicle Citibank seeks.

Furthermore, what Citibank is positing is that the government can never license a patent with enforcement rights if, before it is able to so license, an entity starts infringing, because then the infringer has immunized itself from liability precisely because it has been infringing pre-license. But the law does not support this argument. Quite simply, the Bayh-Dole Act does not seek to protect those, like Citibank, who happen to make investments in technology that may infringe a government patent as if those investments in the technology are themselves the commercial fruition of the government invention that the Act seeks to foster. Accordingly, this affirmative defense should be stricken.

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests the Court to:

(a)    dismiss the fourth, fifth and sixth counterclaims;

(b)    strike the eleventh, twelfth and thirteenth affirmative defenses.

Dated: October   , 2008                **TURNER GREEN AFRASIABI & ARLEDGE LLP**

By:   _____
     Peter R. Afrasiabi
     Attorneys for Plaintiff and counter-defendant,
     Network Signatures, Inc.

13820.1

10377

17

**MOTION TO DISMISS**

# CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2008, I caused to be electronically filed the foregoing

**NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE**

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ed Young, Esq.
Mitchell  Popham, Esq.
Brandon Witkow, Esq.
LOCKE LORD BISSELL & LIDDELL  LLP
300 South Grand, Suite 2600
Los Angeles, California 90071
*Attorneys for Citibank Corporation*


Dated*:* 10/27/08

/s/ Peter Afrasiabi
Peter Afrasiabi

13059.1