Peter R. Afrasiabi (Bar No. 193336)
TURNER GREEN AFRASIABI & ARLEDGE LLP
535 Anton Boulevard, Suite 850
Costa Mesa, California 92626
Telephone:   (714) 434-8750
Facsimile:   (714) 434-8756

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| NETWORK SIGNATURES, INC. <br><br> Plaintiff, <br><br> v. <br><br> CITIBANK, N.A.. <br><br> Defendant. | Case No.  SACV 08-718 DOC (RNBx) <br><br> **NETWORK SIGNATURES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE** <br><br> Hearing Date: Submitted Per Court's 11/7/08 Order |

**A.   Citibank's claims are barred.**

Citibank's counterclaims and opposition brief are ships passing in the night. While the counterclaims contend the license is invalid and void because the Bayh-Dole Act was allegedly not considered properly enough by the government, the opposition brief contends the claims have nothing to do with the Bayh-Dole Act. As a result, Citibank has pled itself out of court on the counterclaims.

If Citibank is to believed that its claims do not arise under the Bayh-Dole Act and instead arise under the Declaratory Judgment Act (DJA), then the claims must be dismissed for lack of jurisdiction. It is axiomatic that the DJA does not give rise to an independent basis of federal jurisdiction; it simply allows for a remedy where subject matter jurisdiction over the claim otherwise exists. *Howard v. America Online, Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) ("A request for declaratory judgment does not provide an independent basis for federal jurisdiction."); *Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992) (same). As such,

one cannot simply file claims in federal court under the label of "declaratory judgment" and magically invoke federal jurisdiction on the claims. Accordingly, if Citibank's contention that the claims do not arise under the Bayh-Dole Act at all is credited, then the claims should be dismissed for lack of any basis for federal jurisdiction.

Of course, Citibank's assertion that its counterclaims simply arise under the DJA and not under the Bayh-Dole Act makes no sense. After all, if the claims do not arise under the Bayh-Dole Act, from where will the parties find the law to craft jury instructions; the DJA won't provide it. The reality is the claims do purport to arise under the Bayh-Dole Act. The problem is that Citibank is not allowed to make such claims under the Bayh-Dole Act.

Nor can Citibank find refuge in the assertion that they are merely defensive claims; they are affirmative claims. Similarly, plaintiff is not alleging claims under the Bayh-Dole Act; plaintiff is asserting claims for patent infringement.

At the end of the day, all the claims clearly contend that the license is void because it does not satisfy various strictures of the Bayh-Dole Act; the captions of the claims alone make that much clear as does the substance of the claims. For example, paragraph 90 (5th claim) specifically argues that it is not in the public's interest to waive requirements under the Bayh-Dole Act. And paragraph 98 (6th claim) makes clear that the challenge to the license hinges on the contention that the government's conclusion about practical application under the Bayh-Dole Act was a bad one. Finally, the fourth claim expressly is predicated upon the contention that the government's licensing decision should be voided by this Court. Counterclaim ¶ 58; *see id.* at ¶ 79 (arguing under Bayh-Dole Act the license here is invalid). For these reasons, Citibank's attempt to distinguish *Platzer* makes no sense.

And as the law cited in Plaintiff's opening brief makes eminently clear: Citibank cannot pursue such claims under the statute because there is no private right of action that allows Citibank to challenge the government's licensing decisions as being improper decisions in violation of the Bayh Dole Act.

13920

2

**NETWORK SIGNATURES' REPLY BRIEF**

**B.      Citibank lacks standing**

Citibank's claims hinge on the contention that the government made a bad policy decision in licensing plaintiff.  Under the clear law, Citibank lacks standing to make that assertion.  Citibank makes four arguments to the contrary; each is addressed in turn.

First, Citibank asserts that since the government is not party here it possesses standing (Opp. at 6).  But it is irrelevant that the government is not a party to the suit because the claims Citibank advances require this court to declare the Executive made a bad licensing decision, something this Court cannot do.  To be sure, it is a remarkably inconsistent position to take to contend on the one hand that Citibank would lack standing if the government were present but on the other hand contend that when the government is not present Citibank does have standing to challenge the government's policy choices.

Second, Citibank contends that it may challenge the license on public policy grounds (Opp. at 6).  The meaning of this claim is unclear and Citibank appears to be playing fast and loose with the phrase "public policy."  What is clear is that Citibank cannot contend the license is unenforceable as a bad exercise of the policy rights reserved to the government under the Bayh-Dole Act.  And Citibank has not pled other federal public policy concerns that justify terminating the license.

Third, Citibank's argument (pages 6-7) for why it has standing proves exactly why it does not.  Citibank seeks to have its calculation that the government's license was unnecessary trump the government's calculus that it was necessary under 35 U.S.C. § 209.  This is precisely the problem with Citibank's claims and defenses.

Finally, Citibank contends (Opp. at 8) that *Service Engineering* is inapposite because the plaintiff sued the agency; that argument is meritless as discussed above.  Citibank also contends that the case is inapposite because here Citibank is a user of the technology.  But that is irrelevant under the Bayh-Dole Act and Citibank noticeably fails to cite a provision of the statute (or any federal law) that purports to protect pre-existing infringers of the patent.  No law plaintiff is aware of requires the government license to predate any

infringement lest the license be invalid, thereby immunizing infringers who infringe before the government licenses; it is certainly the case that no patent law dictates this much.

Whether framed as a private right of action issue or a standing issue, or through the political question doctrine, the political questions that belong to the Executive in these areas are simply not subject to litigation by those disgruntled at the Executive's decisions. *See, e.g.*, *Japan Whaling Association v. Am. Cetacean Society,* 478 U.S. 221, 230 (1986) (excluding "from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch.").

### C. *Southern Research* Forecloses Citibank's argument

Citibank contends that *Southern Research* is inapposite. Not so. Under the law, when the government issues a notice in the federal register, all entities, Citibank included, are deemed to have constructive knowledge. That is the very purpose of the notice and comment provisions of the APA, and Citibank's contention that it did not know of the license are irrelevant.

Accordingly, Plaintiff respectfully submits that the fourth through sixth counterclaims should be dismissed and the eleventh through thirteenth affirmative defenses should be stricken.

Respectfully submitted,

Dated:  November 10, 2008            **TURNER GREEN AFRASIABI & ARLEDGE LLP**

By: _____
Peter R. Afrasiabi
Attorneys for Plaintiff, Network Signatures, Inc.

13920

4

**NETWORK SIGNATURES' REPLY BRIEF**

**CERTIFICATE OF CM-ECF FILIGN AND SERVICE**

On November 10, 2008, I electronically filed the document (s) described as **PLAINTIFF'S REPLY BRIEF** through the Court's CM/ECF system.

    /s/Peter Afrasiabi
    Peter Afrasiabi

9735.1